David N. Lake, Esq., State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE**
  **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
david@lakelawpc.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PELS, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>KEURIG DR. PEPPER. INC., a Delaware corporation,<br><br>    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT;**<br>2. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW; and**<br>3. **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff John Pels, on behalf of himself and all others similarly situated, through his undersigned attorneys, alleges this Class Action Complaint against Defendant Keurig Dr. Pepper. Inc. ("Keurig") on actual knowledge as to his own acts, and on information and belief after due investigation as to all other allegations, as follows:

## NATURE OF THE ACTION

1. This is a consumer class action against Keurig, one of the world's largest bottlers and distributors of bottled water and flavored beverages.

2. Plaintiff is a California consumer who, within the Class Period alleged herein, purchased and consumed bottled beverages distributed as part of Keurig's popular Peñafiel brand. This brand consists of about 14 different Peñafiel varieties including Peñafiel Mineral Spring Water, the particular variety Plaintiff purchased.

3. Peñafiel Mineral Spring Water has been contaminated by toxic levels of arsenic for many years. Indeed, the FDA detected these unlawful arsenic levels on more than one occasion. Keurig disregarded the danger, and did not shut down operations at its Peñafiel plant in Mexico, did not undertake remedial measures until recently (or so it has claimed), and to this day has failed to issue a recall. Keurig has concealed that thousands of its customers have ingested bottled water which contains unsafe levels of arsenic, a known poison.

4. Keurig would not even have undertaken the recently reported remedial measures except that it was embarrassed into doing so by an exposé in *Consumer Reports*. Of the many water brands tested by *Consumer Reports,* Peñafiel water was the only brand that exhibited such high toxicity.

5. Peñafiel is part of Dr. Pepper Snapple Group, owned by Defendant Keurig, which markets more than 50 beverage brands throughout North America. It is likely that the other Peñafiel varieties—which draw water from the same source—are similarly dangerous to unsuspecting consumers.

6. Plaintiff and all members of the Class (defined herein as "all consumers who, while in California, purchased any Peñafiel beverage within the applicable statute(s) of limitations") have been injured by these acts.  In this initial Complaint, Plaintiff seeks restitution and injunctive relief under the Unfair Competition Law (UCL), the False Advertising Law (FAL), and the Consumer Legal Remedies Act (CLRA).  In an Amended Complaint, after the notice period has expired, Plaintiff will seek damages for himself and for Class members.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), enacted pursuant to the Class Action Fairness Act ("CAFA").  Plaintiff has alleged a California class and as such the citizenship of at least one Class member is different from that of the Defendant, a non-California citizen.

8. Defendant is a Delaware corporation, headquartered in Massachusetts.  The amount in controversy exceeds the sum of $5,000,000.  Accordingly, the minimal diversity required under the CAFA is easily satisfied.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff and many Class members are citizens of this District.  Moreover, Defendant regularly transacts and continues to transact business in this District.

10. This Court has *in personam* jurisdiction over the Defendant because, *inter alia,* Defendant: (a) transacted business in this District; (b) maintained continuous and systematic contacts in this District prior to and during the Class Period; and (c) purposefully availed itself of the benefits of doing business in this District.  Accordingly, the Defendant maintains minimum contacts with this District which are more than sufficient to subject it to service of process and to comply with due process of law requirements.

## PARTIES

11. Plaintiff Pels is an individual and a resident of Sonoma County, California and a citizen of California. During the Class Period (as defined below) Plaintiff purchased Peñafiel Mineral Spring Water, was deceived by Defendant in that he was of the belief he was obtaining a safe product made in conformity with the law, and suffered an ascertainable loss and monetary damages as a result of Defendant's unlawful conduct alleged herein. Should Defendant reform its conduct, Plaintiff will resume buying Peñafiel bottled water.

12. Defendant Keurig is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 83 South Avenue, Burlington, Massachusetts 01803, and thus is a citizen of Delaware and Massachusetts.

## FACTUAL ALLEGATIONS

13. The demand for bottled water continues to grow in the United States and internationally. Consumers believe bottled water is healthy, unadulterated and more flavorful in many cases than tap water.

14. Trade organizations like the International Bottled Water Association work hard to reinforce in the public mind that the bottled product is safely sourced and subject to stringent testing:

> Once the water enters the bottled water plant several processes are employed to ensure that it meets the U.S. Food and Drug Administration (FDA) purified water standard. ***These treatments can include utilizing a multi-barrier approach. Measures in a multi-barrier approach may include one or more of the following: reverse osmosis, distillation, micro-filtration, carbon filtration, ozonation, and ultraviolet (UV) light. The finished water product is then placed in a sealed bottle under sanitary conditions and sold to the consumer.***

Moreover, the water from public water systems is often compromised after emergency situations or natural disasters (e.g., hurricanes, floods, tornados, fires, or boil alerts). During these times, bottled water is a necessary and reliable alternative to deliver clean, safe drinking water.[1]

15. Bottled water is subject to comprehensive government regulation at both the federal and state level. In addition, the International Bottled Water Association (IBWA) has adopted industry standards (IBWA Bottled Water Code of Practice) that are, in some instances, more stringent than FDA or EPA requirements. As mandated by federal law, FDA's bottled water standards must be no less stringent and no less protective of the public health than EPA's regulations for public drinking water.

16. Both the FDA and the EPA are underfunded and understaffed. Accordingly, they sometimes limit themselves to notifying distributors of a problem, and expecting them to act responsibly in rectifying it. Most such companies do act responsibly. Others, like Keurig here, do not.

17. One of the chief concerns about any drinking water is that it may become contaminated by either naturally-occurring (yet harmful) substances, or by artificial toxins.

18. Arsenic is poisonous to humans and regulations exist to limit the amount of arsenic in drinking water. Since arsenic is a naturally occurring element it may leach into water sources used for drinking unless detected and filtered out. If it is not, this poses a serious public health risk. For example:

(a) **It Damages the Heart:** CNN reported on May 7, 2019: "Young adults free of diabetes and cardiovascular disease developed heart damage after only five years of exposure to low-to-moderate levels of arsenic commonly found in groundwater. This was the finding of a study published Tuesday in

---

[1] *Bottled Water Vs. Tap Water,* International Bottled Water Association, available at: https://www.bottledwater.org/health/bottled-water-vs-tap-water

-5-
CLASS ACTION COMPLAINT

Circulation: Cardiovascular Imaging, an American Heart Association Journal. "Low-level arsenic exposure is associated with a disproportionate growth of the heart independent of hypertension and other traditional risk factors," the study's lead author, Dr. Gernot Pichler, wrote. "The higher the arsenic content in drinking water, the greater the damage to the heart."

(b) **It is a Carcinogen:** The International Agency for Research on Cancer (IARC), part of the World Health Organization (WHO), has one of its major goals to identify causes of cancer. IARC classifies arsenic and inorganic arsenic compounds as "carcinogenic to humans." This is based on sufficient evidence in humans that these compounds can cause: lung cancer, bladder cancer and skin cancer.

(c) **It can Lead To Kidney Disease:** Arsenic exposure can lead to chronic kidney disease and kidney fibrosis. Numerous scientific studies have shown that arsenic exposure led to various forms of renal dysfunction. Normally after an acute kidney injury, kidney cells regrow to recover the organ's function. However, chronic exposure to toxicants, like arsenic, injures the kidneys repeatedly and leads to the development of chronic kidney disease, an irreversible condition for which there is no current treatment. Worse still, chronic kidney disease is progressive and leads to kidney failure.

(d) **It Increases the Risk of Diabetes:** Science Daily reported in 2018 that chronic exposure to arsenic interferes with insulin secretion in the pancreas, which may increase the risk of diabetes. It drew on research published in the American Journal of Physiology -- Regulatory, Integrative and Comparative Physiology.

19. Under federal and state standards, companies like Keurig are required to ensure that water and water-based products contain arsenic levels no higher than 10 parts per billion (ppb). The FDA has advised:

> Producers of bottled water are responsible for assuring, through appropriate manufacturing techniques and sufficient quality control procedures, that all bottled water products introduced or delivered for introduction into interstate commerce comply with the quality standard (§ 165.110(b)). *Bottled water that is of a quality below the prescribed standard is required by § 165.110(c) to be labeled with a statement of substandard quality.* Moreover, any bottled water containing a substance at a level that causes the food to be adulterated under section 402(a)(1) of the act (21 U.S.C. 342(a)(1)) is subject to regulatory action, even if the bottled water bears a label statement of substandard quality.[2]

20.  Peñafiel water was first bottled in Mexico in 1948 by the Peñafiel family. It became wildly popular. Large companies became interested in it—after a period during which it was owned and run by Cadbury Schweppes. It was acquired (and is now run) by Keurig's Dr. Pepper Snapple Group unit. The bottling operations remain in Mexico.

21.  As early as 2013, high levels of arsenic were detected in Peñafiel water during an inspection of a company named R.R. Importaciones Inc. in Passaic, New Jersey. The proprietor represented that he had only imported the product for personal use in 2012, yet one year later dozens of bottles from that same distributor were ordered destroyed. Keurig has disclaimed knowledge of this incident, yet it may be inferred that high levels of arsenic were in Peñafiel water as early as 2012. It is difficult to understand how Keurig would not know the destination of bottles it exported to the United States.

22.  In 2015 and again in early 2018, the FDA issued import alerts entitled: "Detention Without Physical Examination of Bottled Water due to Arsenic ***and

---

[2] Available at: https://www.federalregister.gov/documents/2004/12/02/04-26531/beverages-bottled-water

Flavored Water Beverages*** Due to Inorganic Arsenic." Among the producers listed was Peñafiel; the toxic products were identified as carbonated water (March 4, 2015) and mineral water (April 4, 2018).  Nonetheless the issue persisted and import of these dangerous products continued into the United States unabated.

23.   On April 18, 2019 Consumerreports.org published an article entitled, "*Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says.*"[3]  The article reflects Consumer Reports' independent review of various brands of bottled water.  Only 11 brands out of 130 tested had detectable levels of arsenic.  Peñafiel water stood alone in exhibiting a high level of toxicity—70% above the legal standard:

> As part of our investigation, CR also was able to purchase two brands of imported water—Jermuk from Armenia and Peñafiel from Mexico—that are on an import alert issued by the federal government for previously having arsenic levels above the federal limit of 10 ppb. Such an alert is meant to "prevent potentially violative products from being distributed in the United States," according to the Food and Drug Administration. Even so, CR easily purchased the two brands in retail stores in two states and on Amazon.
>
> Beverage giant Keurig Dr. Pepper provided CR in March with Peñafiel's bottled water quality report for 2018, *which stated that the water had nondetectable amounts of arsenic.* But the company said this week that it had conducted new testing, because of CR's questions, and confirmed levels above the federal limit, at an average of 17 ppb.
>
> "An arsenic level of 17 ppb is a clear violation of the federal bottled water standard of 10 ppb," says Jean Halloran, director of food policy initiatives at CR.

---

[3] Available at: https://www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/

24. The Mexican government's Office of the Federal Prosecutor for the Consumer has now started an investigation of its own, and Keurig has been asked to supply information about the product.

25. Hazardous water is of no use and of no value to consumers, and threatens their health. Keurig has acted irresponsibly and unlawfully in connection with Peñafiel water, and appears to have engaged in an attempt to conceal the truth.

26. For the foregoing reasons, Plaintiff brings this action for restitutionary and injunctive relief.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(2) and 23 (b)(3) of the Federal Rule of Civil Procedure, seeking damages and injunctive relief under state consumer protection statutes on behalf of himself and all members of the Class.

28. The Class consists of all consumers who, while in California, purchased any Peñafiel beverage within the applicable statute(s) of limitations.

29. The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable. While the exact number and identities of the persons who fit within each proposed class are presently unknown, it includes thousands of persons and the exact number can be ascertained from Defendant's records or by resort to vendor records. Peñafiel beverages are sold by Target, Wal-mart, Instacart and over Amazon.com.

30. <u>Common Questions Predominate</u>: This action involves common questions of law and fact to the Class because each Class Member's claim derives from the same allegedly unlawful and deceptive action. The common questions of law and fact involved predominate over questions that affect only Plaintiff or individual Class Members. Thus, proof of a common or single set of facts will establish the right of each member of the Class to recover.

31. Among the questions of law and fact common to the Class are:

    a. Whether Defendant marketed and sold in an unlawful manner;

    b. Whether Defendant's actions were deceptive and misleading in connection with marketing and sale of Peñafiel beverages;

    c. Whether Defendant engaged in the course of conduct complained of herein;

    d. Whether Defendant's marketing and offer for sale the items on the website constitutes a deceptive practice; and

    e. The proper measure of damages.

32. <u>Typicality</u>: Plaintiff's claims are typical of the Class because he bought Peñafiel during the Class Period. Defendant's allegedly deceptive actions concern the same business practices described herein. Thus, Plaintiff and Class Members sustained the same injuries and damages arising out of Defendant's conduct in violation of law. The injuries and damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of law as alleged herein.

33. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation they are due for the illegal conduct of which they complain. Plaintiff also has no interests that conflict with or are antagonistic to the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and that of the Class. No conflict of interest exists between Plaintiff and Class Members because all questions of law and fact regarding liability of Defendant are common to Class Members and predominate over the individual issues that may exist. Plaintiff and his counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties seeking the maximum possible recovery for the Class Members.

34. <u>Superiority</u>: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and the burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

35. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

36. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CLAIM FOR RELIEF

**(Violation of California's Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750,** *et seq.* **(Equitable relief only)**

37. Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

38. This Claim is brought pursuant to CLRA, California Civil Code §§ 1750, *et seq.*

39. CLRA prohibits any unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices in connection with the sale of any goods or services to consumers. *See* Cal. Civ. Code § 1770. The CLRA "shall be liberally construed and applied to promote its 15 underlying purposes, which are to protect consumers against unfair and deceptive business 16 practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760.

40.. Defendant is a "person" under the CLRA. Cal. Civ. Code § 1761(c). Plaintiff is a "consumer" under the CLRA. Cal. Civ. Code § 1761(d). The Peñafiel beverages are "good(s)"" under the CLRA, Cal. Civ. Code § 1761(a). Plaintiff's purchase of the Peñafiel beverages constitute a "transaction[]" under the CLRA. Cal. Civ. Code § 1761. Defendant's actions and conduct described herein constitute transactions that have resulted in the sale of goods to consumers.

41. Defendant's failure to conform the Peñafiel beverages' contents to required safety standards is an unfair, deceptive, unlawful, and unconscionable commercial practice.

42. As a result, Defendant's conduct violates several provisions of the CLRA, including, but not limited to:

    a. 1770(a)(5): Representing that goods or services have sponsorship, ***approval***, ***characteristics, ingredients, uses, benefits,*** or quantities that they do not have—here, each Peñafiel beverage carried with it the impression that it was a safe, legally compliant product which consumers could use without risking serious illness;

    b. 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, each Peñafiel beverage carried with it the impression that it was a safe, legally compliant product which consumers could use without risking serious illness; and

43. As a result of Defendant's violations, pursuant to Cal. Civ. Code 1780(a)(2) Plaintiff is entitled to an injunction to prevent the wrongdoing from continuing.

44. In accordance with Cal. Civ. Code § 1780(d), Plaintiffs have attached a "venue affidavit" to this Complaint, showing that this action has been commenced in the proper county.

## SECOND CLAIM FOR RELIEF

### (Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.* - Unlawful Prong)

45. Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

46. Section 17200 of the California Business & Professions Code, known as the Unfair Competition Law ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or misleading advertising ...." Section 17200 specifically prohibits any "unlawful ... business act or practice."

47. The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

48. Defendant's conduct was and continues to be unlawful under FDA regulations.

49. Defendant's conduct in unlawfully offering for sale and selling Peñafiel beverages that are unlawfully contaminated by arsenic is without excuse or justification.

50. Defendant has violated the FDA arsenic level rules which make it unlawful to disseminate beverage containing arsenic at levels higher than 10 ppb.

51. Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order requiring Defendant to immediately cease the above described unlawful acts. In addition, Plaintiff seeks restitution for himself and for the Class.

# THIRD CLAIM FOR RELIEF

### (Violation of California's Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.* - Unfair Prong)

52. Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

53. Section 17200 of the California Business & Professions Code (the "UCL") prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or misleading advertising ..." Section 17200 specifically prohibits any "unfair ...business act or practice." Defendant's practices violate the UCL's "unfair" prong.

54. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is also "unfair" under the UCL if a defendant's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A business act or practice is also "unfair" under the UCL where the consumer injury is substantial, the injury is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided considering the available alternatives.

55.. Defendant's conduct, as detailed herein, constitutes unfair business practices. Defendant's practices, as described herein, are "unfair" within the meaning of the UCL because the conduct is unethical and injurious to California residents, and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers, including Plaintiff and Class Members.

56. While Defendant's decision to market the Peñafiel beverages despite their violative nature and in violation of federal and California law may have utility to Keurig in that it allows Defendant to sell more Peñafiel beverages without

incurring high compliance costs, this is exactly the type of conduct which the law prohibits.

57. Defendant's misconduct not only injures the persons who purchase the Peñafiel beverages, but it also injures also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unfair and unethical conduct, and who do filter their beverages.

58. Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue, and misleading advertising in violation of California Business & Professions Code § 17200, the UCL.

59. Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order requiring Defendant to immediately cease such acts of unlawful, unfair, and/or fraudulent business practices. In addition, Plaintiff seeks restitution for himself and for the Class.

### FOURTH CLAIM FOR RELIEF

**(Violation of California's False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*)

60. Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

61. Defendant made and distributed, in California and in interstate commerce, the Peñafiel beverages wherein the product was adulterated with high levels of arsenic.

62. The FAL states:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the

>public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

63. Defendant's business practices as alleged herein constitute unfair, deceptive, untrue and misleading advertising pursuant to California's FAL because Defendant advertised the Peñafiel beverages in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendant to be untrue or misleading, as Defendant created the impression that the product was safe to consume when, in fact, it was not.

64. Pursuant to section 17535 of the California Business and Professions Code, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act

prohibited by law, including those set forth in the Complaint.  In addition, Plaintiff seeks restitution for himself and for the Class.

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims for which a jury is available.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the general public, demands judgment against Defendant and requests the entry of:

a. An order declaring that the conduct complained of herein violates the CLRA;

b. An order declaring that the conduct complained of herein violates the UCL;

c. An order declaring that the conduct complained of herein violates the FAL;

d. An order enjoining Defendant's unlawful and unfair practices;

e. An order requiring Defendant to undertake corrective action;

f. An Order of restitution for Plaintiff and for the Class.

g. An award of attorneys' fees and the reimbursement of all litigation costs pursuant to, *inter alia,* CLRA, Cal. Civ. Proc. Code § 1021.5, and pursuant to the doctrine set forth in *Graham v. DaimlerChrysler Corp.* 34 Cal.4th 553, 576-77 (2004).  Such an award is appropriate because: (a) this litigation is aimed at enforcing important rights affecting the public interest; (b) it seeks to confer a significant benefit on the general public or a large class of persons; and (c) the necessity and financial burden of private enforcement is such as to make the award appropriate; and

      h.    Such other and further relief as this Court may deem just, equitable, or proper.

Dated:  June 3, 2019

                              **LAW OFFICES OF DAVID N. LAKE**

                              By: ___/s/ *David N. Lake*_____
                                    David N. Lake

Laurence D. Paskowitz
**THE PASKOWITZ LAW FIRM P.C.**
208 East 51st Street, Suite 380
New York, NY 10022
212-685-0969
lpaskowitz@pasklaw.com

                                and

Roy L. Jacobs
**ROY JACOBS & ASSOCIATES**
420 Lexington Avenue, Suite 2440
New York, NY 10170
212-867-1156
rjacobs@jacobsclasslaw.com

*Attorneys for Plaintiff*