ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
NOAH M. SCHUBERT (S.B.N. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law

LAURENCE D. PASKOWITZ (*pro hac vice*)
THE PASKOWITZ LAW FIRM P.C.
208 East 51st Street, Suite 380
New York, NY 10022
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com

Attorneys for Plaintiff John Pels
[additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN PELS, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>KEURIG DR. PEPPER, INC.,<br><br>            Defendant. | Case No. 3:19-cv-03052-SI<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:         October 17, 2019<br>Time:         10:00 a.m.<br>Courtroom: 1, 17th Floor<br>Judge:        Hon. Susan Illston |

The parties jointly submit this Joint Case Management Conference Statement in conjunction with the forthcoming Case Management Conference ("CMC"), scheduled for October 17, 2019 at 10:00 a.m., pursuant to the Standing Order for All Judges of the Northern District of California, effective November, 1 2018, Civil Local Rule 16-9, and the Order Setting Initial Case Management Conference and ADR Deadlines (ECF No. 18).

**1. Jurisdiction and Venue.**

Plaintiff alleges that this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because some members of the proposed class and the Defendant, Keurig Dr. Pepper Inc. ("Keurig" or "Defendant"), are citizens of different states and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff and many Class members are citizens of this district. Moreover, Defendant regularly transacts and continues to transact business in this District. The summons and complaint were served on Defendant on June 5, 2019, and Defendant has appeared. No parties remain to be served.

Defendant has not raised any issues regarding personal jurisdiction or venue, but reserves the right to do so if those issues arise.

**2. Facts**

*Plaintiff's Statement of the Facts*

This is a consumer class action against Keurig, one of the world's largest bottlers and distributors of bottled water and flavored beverages. Plaintiff is a California consumer who, within the Class Period, purchased and consumed Keurig's Peñafiel Mineral Spring Water.

The operative Amended Class Action Complaint, filed June 25, 2019, alleges that Peñafiel Mineral Spring Water has been contaminated by toxic levels of arsenic for many years. The Food and Drug Administration ("FDA") detected these unlawful arsenic levels (in excess of 10 ppb) on more than one occasion and, since 2009, New Jersey regulators have found arsenic levels in this bottled water that exceeded the legal limit by more than 100%. Keurig has disregarded the danger; it did not shut down operations at its Peñafiel plant in Mexico, and it did not undertake remedial

measures until demanded to do so by Plaintiff herein in his Class Action Complaint (ECF No.1). Finally, on June 21, 2019, Keurig belatedly issued a "withdrawal" of the contaminated bottles of Mineral Spring Water, stating that its own lab tests confirmed the existence of arsenic at levels that violated federal bottled water standards. Such standards required the water bear a label indicating that it was "substandard." Prior to Plaintiff's action, however, Keurig had concealed that thousands of its customers were ingesting bottled water that contained unlawful levels of arsenic, a known poison and known carcinogen.

In 2015 and again in early 2018, the FDA issued import alerts entitled: "Detention Without Physical Examination of Bottled Water due to Arsenic ***and Flavored Water Beverages*** Due to Inorganic Arsenic." Among the producers listed was Peñafiel; the toxic products were identified as carbonated water (March 4, 2015) and mineral water (April 4, 2018). Nonetheless the issue persisted, and these dangerous products continued to be imported into the United States unabated.

The long-standing FDA Rule at issue, 21 C.F.R.§ 165.110 ("165.110"), clearly applies to the Peñafiel Mineral Spring Water at issue in this action. Under the rule, the addition of carbonation as an ingredient exempts such *ingredient* from regulation under this particular rule, but does not exempt from regulation the spring water component of the bottled water.  The water at issue, sold as Peñafiel Mineral Spring Water, is clearly regulated as "bottled water."  Should the Court deem 165.110 as ambiguous, the FDA in comments made simultaneously with the adoption of 165.110 reiterated that carbonation is irrelevant to whether bottled water is regulated, and the Court may look to such comments in applying 165.110.  Moreover, the FDA, in its bans of Peñafiel Mineral Spring Water, deemed it violative in yet another way—as "adulterated" under 21 USC § 342 (a)(1).

***Defendant's Statement of the Facts***

On June 21, 2019, Keurig Dr Pepper ("KDP") voluntarily withdrew Peñafiel carbonated water ("Peñafiel Water"), a limited-distribution product in the United States, in consultation with the FDA regarding the product. Communications with the FDA were prompted by testing showing that certain samples of Peñafiel Water contained arsenic above 10 parts per billion (ppb), which is the regulatory limit for "Bottled water" under 21 C.F.R.§ 165.110. Although KDP did not, and does not,

consider § 165.110 applicable to Peñafiel Water—because the product contains added carbonation as an ingredient, and § 165.110(a)(1) expressly exempts water with added ingredients from the standards of identity and quality for "bottled water"—it nonetheless agreed to voluntarily withdraw the product from the market in consultation with the FDA.

Plaintiff alleges he purchased the Peñafiel Water sometime during the class period, but he did not allege precisely when or where he purchased it, nor did he claim that he tested his Peñafiel Water to determine whether it contained arsenic. Plaintiff did not allege that he or anyone else was injured by the Peñafiel Water. Plaintiff's allegations appear to be substantially, if not exclusively, premised on an alleged regulatory violation of § 165.110. As stated above, and in KDP's pending Motion to Dismiss, its position is that the regulation does not apply to Peñafiel Water.

### 3. Legal Issues

*Plaintiff's statement of the legal issues*

The bottled water at issue is regulated by federal and state law and Defendant Keurig was required to ensure that water and water-based products contain arsenic levels no higher than 10 parts per billion (ppb), pursuant to 21 CFR § 165.110(b). That statute provides that bottled water that is of a quality below the prescribed standard is required by § 165.110(c) to be labeled with a statement of substandard quality, if sold at all. Bottled water containing a substance at a level that causes the food to be adulterated under section 402(a)(1) of the Food and Drug Act, 21 U.S.C. 342(a)(1)), is subject to regulatory action, even if the bottled water bears a label statement of substandard quality. Since Defendant's water was denoted "Mineral Spring Water," it is subject to regulation despite the fact that it is carbonated and has been so regulated since 1995. Defendant has thus violated both 21 CFR § 165.110(b) and 21 U.S.C. 342(a)(1).

Plaintiff alleges claims against Keurig pursuant to the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and the common law of unjust enrichment, on behalf of a class of California purchasers of Peñafiel Spring Water. In addition to the California claims, Plaintiff seeks to certify a nationwide

class of purchasers of Peñafiel Mineral Spring Water based on the same underlying factual allegations. Plaintiff also seeks an injunction preventing the further sale of adulterated water and requiring continued remedial measures should the product be reintroduced to the market.

*Defendant's statement of the legal issues*

21 C.F.R. 165.110 is the federal standard of identity for bottled water. It sets the limit for arsenic in bottled water at 10 ppb. By its plain text, § 165.110 covers only water "with no added ingredients." Carbonation—including added carbonation that makes water bubbly—is an ingredient. The federal standard of identity for bottled water therefore excludes water with added carbonation. Peñafiel Water has added carbonation. This brings the product outside the definition of "bottled water." 21 C.F.R. § 165.110(a)(1). Plaintiff's UCL, FAL, and CLRA claims are based on his erroneous reading of this regulation, which is inapplicable here.

**4.    Motions**

On July 26, 2019, Defendant filed a motion to dismiss Plaintiff's Amended Class Action Complaint (ECF No. 24). In connection with its motion to dismiss, Defendant filed a Request for Judicial Notice (ECF No. 25). Plaintiff filed his opposition to Defendant's Motion to Dismiss on September 9, 2019 (ECF No. 34). On September 9, 2019, Plaintiff also filed his response to Defendant's Request for Judicial Notice (ECF No. 35) and Plaintiff's Request for Judicial Notice (ECF No. 36). The motion is set for hearing by this Court on October 17, 2019 at 10:00 a.m.

Plaintiff intends to move for class certification pursuant to the schedule proposed below. Plaintiff may file additional motions, including a motion for summary judgment.

KDP intends to move for summary judgment and may do so before or after Plaintiff moves for class certification.

**5.    Amendment of Pleadings**

Plaintiff filed an amended complaint on June 25, 2019 (ECF No. 11). If any part of Plaintiff's complaint is dismissed, Plaintiff has requested leave to amend and would request thirty days from any such ruling to file an amended complaint addressing any deficiencies the Court identified in its order.

As the case progresses through discovery, Plaintiff anticipates he may include additional state plaintiffs and claims in a further amended complaint, as necessary and appropriate. Plaintiff proposes that the Court set a deadline to add parties and/or claims fourteen days prior to Plaintiff's motion for class certification, pursuant to the schedule proposed below. Plaintiff also reserves the right to seek leave to amend pursuant to Rule 15.

### 6.     Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and met and conferred pursuant to Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### 7.     Disclosures

The parties have agreed to exchange initial disclosures on October 18, 2019.

### 8.     Discovery

On October 2, 2019, Plaintiff served requests for the production of documents and interrogatories on Defendant regarding Peñafiel beverages that exceeded permitted arsenic levels.

The parties have agreed to stipulate to a protective order, generally following this Court's model Stipulated Protective Order for Standard Litigation, available on this Court's website.

The parties agree that, at present, no changes to the limitations on discovery imposed by the Federal Rules of Civil Procedure or the Local Rules need to be made. Both parties reserve the right to reevaluate this position as discovery progresses and will in good faith consider requests to enlarge those limits without necessitating intervention by the Court.

### 9.     Class Actions

Plaintiff will seek certification of this action as a class action under Rules 23(b)(2) and 23(b)(3). In his complaint, Plaintiff proposed a nationwide class of all consumers in the United States who purchased any Peñafiel beverage that exceeded permitted arsenic levels within the applicable statute(s) of limitations. Plaintiff also proposed a California Subclass consisting of all California consumers who purchased any Peñafiel beverage that exceeded permitted arsenic levels

within the applicable statute(s) of limitations. Plaintiff's proposed classes are based on alleged common legal and factual issues, including (i) whether Defendant marketed and sold any Peñafiel beverage which exceeded the established arsenic limits; (ii) whether Defendant's actions were deceptive and misleading in connection with marketing and sale of Peñafiel beverages; (iii) whether Defendant engaged in the course of conduct alleged in the Complaint; (iv) whether Defendant's marketing and offer for sale the items on its website constitute a deceptive practice; and (v) the proper measure of damages.

KDP disputes that this case is suitable for class treatment and intends to oppose Plaintiff's motion for class certification. In particular, while KDP does not believe Plaintiff can satisfy any of the prerequisites of Rule 23, a class action filed on the heels of market withdrawals or recalls do not satisfy either the "superiority" or "adequacy" requirements of Rule 23, in that this action attempts to deploy the class device to provide relief already available to putative class members (*i.e.*, the product has already been withdrawn, and affected consumers can obtain refunds).

All attorneys of record for Plaintiff have reviewed the Procedural Guidance for Class Action Settlements.

### 10.    Related Cases

The parties are not aware of any related cases or proceedings pending before another judge of this court or before another court or administrative body.

### 11.    Relief

Plaintiff seeks damages, restitution, restitutionary disgorgement for quasi-contract/unjust enrichment, and injunctive relief.  Damages and restitution (including restitutionary disgorgement) should equal a full refund of the amount paid by Class members for Peñafiel mineral spring water. Plaintiff also seeks an injunction preventing Defendant Keurig from further distributing mineral spring water that violates federal and state arsenic limits and requires that Keurig adopt proper filtration methods (and adequate testing) to ensure that no such spring water in the future violates federal and state arsenic limit standards. Further, Defendant Keurig should be enjoined from

disregarding any federally or state import bans relating to its mineral spring water. Plaintiff also seeks attorneys' fees and the costs of this action.

KDP disputes that Plaintiff is entitled to any relief, including but not limited to that outlined in the paragraph above.

### 12. Settlement and ADR

The parties met and conferred regarding the proper time to discuss settlement and the selection of the ADR process. Plaintiff believes the parties should agree to private mediation with a mediator to be mutually agreed to by the parties. KDP agrees that private mediation with a mutually agreed upon mediator is the best option for this case. The parties have complied with ADR L.R. 3-5.

### 13. Consent to Magistrate Judge for All Purposes

All parties have not consented to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

### 14. Other References

The parties agree that the case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

The parties are not aware of issues that can be narrowed by agreement or motion at this time.

### 16. Expedited Trial Procedure

The parties do not believe this case is appropriate for the Expedited Trial Procedure of General Order No. 64.

### 17. Scheduling

The parties propose the following scheduling in this action:

| DATE | DESCRIPTION |
|---|---|
| October 25, 2019 | Deadline to file Stipulated Protective Order |
| June 19, 2020 | Deadline for Private Mediation |
| September 21, 2020 | Close of Fact Discovery |
| October 19, 2020 | Deadline for Plaintiff to Identify any Expert(s) for Class Certification and Serve Report(s) |
| December 7, 2020 | Deadline for Defendant to Identify any Expert(s) for Class Certification and Serve Report(s) |
| January 8, 2021 | Deadline for Plaintiff to Identify any Rebuttal Expert(s) for Class Certification and Serve Report(s) |
| January 29, 2021 | Close of Expert Discovery for Class Certification |
| February 12, 2021 | Deadline to Amend Pleadings and/or Add Parties/Claims |
| February 26, 2021 | Deadline to File Motion for Class Certification |
| April 9, 2021 | Deadline to File Opposition to Class Certification |
| May 7, 2021 | Deadline to File Reply in Support of Class Certification |
| June 11, 2021 | Hearing on Motion for Class Certification |

**18.   Trial**

Plaintiff has sought a jury trial on all causes of action so triable. The parties believe this matter may be tried in five days.

**19.     Disclosure of Non-Party Interested Entities or Persons**

Plaintiff has filed the Certification of Interested Entities or Persons, as required by Civil Local Rule 3-15. Plaintiff certifies that as of this date, other than the named parties, there is no such interest to report.

Defendant has filed the Certificate of Interested Entities or Persons, as required by Civil Local Rule 3-15.  Dkt No. 14.  KDP disclosed the following parent entities that own, directly or indirectly, 10% or more of the stock of KDP: Mondelez International Holdings, LLC (whose indirect ultimate parent is Mondelez International, Inc.), and JAB Holding Company, S.a.r.l. (a German privately held conglomerate).

**20.     Professional Conduct**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other**

The parties have consented to electronic service of all documents under Rule 5(b)(2)(A).

DATED: October 10, 2019                          SCHUBERT JONCKHEER & KOLBE LLP

By: /s/ *Willem F. Jonckheer*

ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
NOAH M. SCHUBERT (S.B.N. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law

LAURENCE D. PASKOWITZ
THE PASKOWITZ LAW FIRM P.C.
208 East 51st Street, Suite 380
New York, NY 10022
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com
*pro hac vice*

ROY L. JACOBS
ROY JACOBS & ASSOCIATES
420 Lexington Avenue, Suite 2440
New York, NY 10170
Telephone: (212) 867-1156
rjacobs@jacobsclasslaw.com
*pro hac vice*

DAVID N. LAKE (S.B.N. No. 180775)
LAW OFFICES OF DAVID N. LAKE
A Professional Corporation
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
david@lakelawpc.com

Attorneys for Plaintiff John Pels


By: */s/ Charles C. Sipos*

    Charles C. Sipos, *pro hac vice*
    Lauren Watts Staniar, *pro hac vice*
    Perkins Coie LLP
    1202 Third Avenue, Suite 4900
    Seattle, Washington 98101
    Tel: (206) 359-8000
    Fax: (206) 359-9000
    Email: CSipos@perkinscoie.com
    Email: LStaniar@perkinscoie.com


    David T. Biderman, Bar No. 101577
    Jasmine Wetherell, Bar No. 288835
    Perkins Coie LLP
    505 Howard Street, Suite 1000
    San Francisco, CA  94105-3204
    Tel: (415) 344-7000
    Fax:  (415) 344-7050
    Email: DBiderman@perkinscoie.com
    Email: JWetherell@perkinscoie.com

    Attorneys for Defendant
    Keurig Dr Pepper, Inc.

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
CASE NO. 3:19-cv-03052-SI
145844511.1

10

**ATTESTATION OF FILER**

Pursuant to Civil Local Rule 5-1(i)(3), I, Willem F. Jonckheer, hereby attest that concurrence in the filing of the document has been obtained from each of the signatories.

Dated: October 10, 2019

By: */s/ Willem F. Jonckheer*
Willem F. Jonckheer