UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PELS,<br><br>    Plaintiff,<br><br>    v.<br><br>KEURIG DR. PEPPER, INC.,<br><br>    Defendant. | Case No. 19-cv-03052-SI<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 24 |

On October 17, 2019, the Court heard argument on the motion by defendant Keurig Dr. Pepper, Inc. ("Keurig") to dismiss this action with prejudice. Based on the papers submitted and arguments made, the Court hereby GRANTS the motion to dismiss, with leave to amend.

**BACKGROUND**

Defendant Keurig owns a variety of beverage families, including Peñafiel water, which is advertised and labeled as "mineral spring water," the product at issue in this case.

On June 25, 2019 plaintiff John Pels filed an amended[1] class-action complaint[2] seeking to

---

[1] Plaintiff filed an initial complaint on June 3, 2019 and an amended complaint on June 25, 2019. Dkt. No. 1. The amended complaint was filed in light of Keurig's June 21, 2019 press release informing the public of the voluntary withdrawal of Peñafiel water from the market.

[2] The complaint alleges five claims: (1) California's Consumers Legal Remedies Act ("CLRA"), (2) California's Unfair Competition Law's ("UCL") Unlawful Prong, (3) California's UCL's Unfair Prong, (4) California's False Advertising Law (FAL), and (5) unjust enrichment. The first four claims are limited to a class of California consumers while the fifth claim encompasses a nationwide class. Dkt. No. 11 ¶ 29. The complaint details a variety of health issues associated with arsenic consumption but does not allege plaintiff or class members suffered any health issues after consuming Peñafiel Water. *Id.* ¶ 18.

1   represent "all United States consumers who purchased any Peñafiel beverage that exceeded
2   permitted arsenic levels within the applicable statute(s) of limitations." Dkt. No. 11 ¶ 29. The
3   complaint defines "permitted arsenic levels" as no more than 10 ppb (the current FDA standard for
4   bottled water). *Id.* ¶ 19. Plaintiff alleges Peñafiel water has contained more than 10 ppb arsenic
5   since at least 2009, when New Jersey regulators found arsenic levels exceeding FDA limits in
6   Peñafiel water. Dkt. No. 11 ¶¶ 3, 21. In addition, the FDA issued import alerts for Peñafiel water
7   in 2015 and again in 2018 because of improper arsenic levels. *Id.* ¶ 22. The complaint also
8   highlights an April 2019 ConsumerReports.com article in which sampled Peñafiel water contained
9   17 ppb arsenic. *Id.*

On June 21, 2019, Keurig issued a press release announcing the withdrawal of Peñafiel water "due to violative levels of arsenic." Dk.t No. 11 ¶ 25. Prior to issuing the statement, Keurig hired an independent laboratory to test Peñafiel water for arsenic. *Id.* The lab concluded Peñafiel water exceeded the FDA standard of 10 ppb. *Id.* The June 2019 announcement also stated Keurig recently installed "enhanced filtration systems" at the facilities producing Peñafiel water and the product now meets FDA standards for arsenic. *Id.* Keurig also offered all consumers who bought Peñafiel water a full refund for the Peñafiel water still in their possession. *Id.*

**LEGAL STANDARD**

**I.      Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). The party invoking federal jurisdiction, here the plaintiff, bears the burden of establishing subject matter jurisdiction. See *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted). A complaint will be dismissed if, looking at the complaint as a whole, it lacks federal jurisdiction either "facially" or "factually." *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

2

Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual.").

When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation and internal brackets omitted).

## II. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that amount to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While courts do not require "heightened fact pleading of specifics," the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint, drawing all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

3

**DISCUSSION**

Defendant moves to dismiss the complaint on several grounds, including (1) that plaintiff lacks Article III standing and (2) that plaintiff fails to state a claim on which relief can be granted. The Court finds that the amended complaint does not sufficiently allege facts to establish standing to bring this suit, and therefore finds it unnecessary discuss defendant's 12(b)(6) arguments.

To establish standing, the plaintiff must show: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008). A concrete injury is one that is "distinct and palpable . . . as opposed to merely abstract." *Schmier v. United States Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2009). Claims brought under California's CLRA, UCL, or FAL must satisfy federal standing requirements under Article III as well. *See Birdsong v. Apple*, 590 F.3d 955, n.4 (9th Cir. 2009) (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (holding that a party asserting state law claims in federal court "must meet the stricter federal standing requirements of Article III.").

Keurig argues the amended complaint fails to plead sufficient allegations for Article III standing. First, Keurig argues the amended complaint does not allege a particularized injury. Dkt. No. 24 at 16–19 (Mot. to Dismiss). Keurig also argues plaintiff lacks standing because the statute plaintiff alleges Peñafiel violates, 21 C.F.R. §165, does not apply to Peñafiel water. Further, Keurig argues the amended complaint fails to plead standing for injunctive relief. *Id.* at 21–22.

### A. Does §165 Apply to Peñafiel?

If §165 does not apply to Peñafiel water, then Peñafiel does not violate FDA standards either in terms of content or labeling; and as such, plaintiff has not alleged a violation to assert and does not have standing.

FDA standards define "bottled water" as "water . . . with no added ingredients." 21 C.F.R. § 165.110(a)(1). Keurig argues these FDA standards do not apply to Peñafiel water because Peñafiel contains carbon dioxide (i.e. an ingredient) and urges this Court to dismiss plaintiff's claims with

4

prejudice. Dkt. No. 24 at 24 (Mot. to Dismiss) ("Peñafiel Water had added carbonation (carbon dioxide) to make it bubbly like a soda water."); Dkt. No. 45 at 8 (Reply to Mot. to Dismiss) ("Peñafiel Water has an 'added ingredient': carbonation.").

In response, plaintiff cites FDA guidance from 1995 interpreting 21 C.F.R. § 165.110. Dkt. No. 34 at 16–17. The guidance concludes that all bottled water described by a "standard of identity"—such as "spring water" or "mineral water"—is governed by § 165.110, even if other terms are included, i.e., "carbonated mineral spring water." *Id*. In its reply, Keurig cites a recent Supreme Court case narrowing the circumstances in which courts give deference to agency interpretations of statutes. Dkt. No. 45 at 6 (Reply to Mot. to Dismiss), citing *Kisor v. Wilke*, 139 S.Ct. 2400, 2415-18 (2019) (narrowing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997) and *Bowles v. Seminole Rock & Sand Co*., 325 U.S. 410 (1945))). According to *Kisor*, a court should not give deference to an agency's interpretation of its own standards unless those standards are "genuinely ambiguous.[]" 139 S.Ct. at 2415-2416 ("[D]. If genuinely ambiguous, the statute may only be construed using the agency's interpretation if the interpretation is reasonable. *Id*. at 2416.

The Court finds §165 genuinely ambiguous and applies to Peñafiel water. The statute describes bottled water as well as providing specific definitions of "mineral water" (165.110(a)(2)(ii)) and "spring water" (165.110(a)(2)(vi)). The statues states in relevant part:

(1) Description. Bottled water is water that is intended for human consumption and that is sealed in bottles or other containers with no added ingredients except that it may optionally contain safe and suitable antimicrobial agents. Fluoride may be optionally added within the limitations established in 165.110(b)(4)(ii). Bottled water may be used as an ingredient in beverages (e.g., diluted juices, flavored bottled waters). *It does not include those food ingredients that are declared in ingredient labeling* as "water," "*carbonated water*," "disinfected water," "filtered water," "seltzer water," "soda water," "sparkling water," and "tonic water." The processing and bottling of bottled water shall comply with applicable regulations in part 129 of this chapter.

(2) Nomenclature. The name of the food is "bottled water," "drinking water," or alternatively one or more of the following terms as appropriate:

\*\*\*(iii) The name of water containing not less that 250 parts per million (ppm) total solids coming from a source tapped at one or more bore holes or springs, originating from a geologically and physically protected underground water source, may be "mineral water" …

5

> ***(v) The name of water that, after treatment and possible replacement of carbon dioxide, contains the same amount of carbon dioxide from the source that it had at emergence from the source may be "sparkling bottled water."
>
> ***(vi) The name of water derived from an underground formation from which water flows naturally to the surface of the earth may be "spring water."…

165.110(a). Defendant's product is labeled "mineral spring water." Under these circumstances, the agency's interpretation is most helpful:

> …Products or ingredients described by a terms that is defined by the standard of identity (e.g., "spring water") or with a term that makes a claim about the water (e.g., "natural water") are standardized waters and must comply with § 165.110 whether carbonation has been added or not. Although the terms to describe the water ingredient in a product may sometimes be used in combination with a term that is not included under the standards (e.g. "carbonated spring water" or "filtered natural water"), the product or the water ingredient in the product must comply with the bottled water standards because a claim is being made concerning the value of the water…. Dkt. 34, at 16-17.

Since the statute itself is ambiguous as to how the definition of "mineral water" or "spring water" is impacted by the addition of carbonation, this guidance is both persuasive and helpful. As such, the statute clearly does apply to the Peñafiel mineral spring water.

### B. Particularized Injury

An injury is particularized when it affects the plaintiff in "a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Because Keurig raises facial challenges to plaintiff's standing, the Court "[a]ccept[s] the [plaintiff's] allegations as true and draw[s] all reasonable inferences in the [plaintiff's] favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). However, the plaintiff's alleged injury must be supported by more than conclusory statements unsupported by specific facts. *Barnes v. Marriott Hotel Servs.*, No. 15-cv-01409-HRL, 2017 U.S. Dist. LEXIS 22588, at *20–21 (N.D. Cal. Feb. 16, 2017).

Keurig argues plaintiff has failed to plead particularized injury in two ways: (1) plaintiff fails to allege *he* tested the Peñafiel water he purchased for arsenic—relying instead on Consumer Reports' and Keurig's testing, and (2) plaintiff fails to plead the Peñafiel water *he* purchased contained violative levels of arsenic. Dkt. No. 24 at 17 (Mot. to Dismiss). Defendant's first argument fails. Keurig cites three cases in support thereof: *Gaminde v. Lang Pharma Nutrition,*

*Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th. Cir. 2014); and *Doss v. General Mills, Inc.*, No. 36 (S.D. Fla filed Jun. 14, 2019). *Id*. at 17–18. All are distinguishable.[3]

However, plaintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels. In his opposition, plaintiff argues "[p]laintiff has alleged that *all* Peñafiel mineral spring water during the Class Period was contaminated with arsenic" because all Peñafiel water comes from the same source. Dkt. No. 34 at 15 (emphasis in original) (Opp'n to Mot. to Dismiss). But nowhere in the complaint, including ¶ 5 to which plaintiff cites, does he make such a straightforward allegation. Further, plaintiff does not specify when or where he allegedly purchased Peñafiel.

The Court therefore dismisses the amended complaint, without prejudice, for lack of standing for failure to plead a particularized injury.

### C. Standing for Injunctive Relief

To successfully plead injunctive relief the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Here, plaintiff alleges he will resume purchasing the products in the future if Keurig adheres to proper standards and therefore falls into the second category—seeking injunctive relief out of fear that defendant will falsely label Peñafiel in the future. Dkt. No. 11 ¶ 11. However, defendant is no longer selling Peñafiel water in the United States. Therefore, there is no injunctive relief to be had. During oral argument, plaintiff urged the Court not to dismiss the injunctive relief claim and "address it later." Transcript 26:5. However, this is precisely the type of hypothetical injury that is fatal to a claim for injunctive relief.

---

[3] In *Gaminde*, the plaintiffs relied solely on one USDA study that only tested two bottles of CVS's Krill Oil. 2019 WL 1338724, at *2. Here, plaintiff relies on a Consumer Reports article and Keurig's own testing. Dkt. No. 11 ¶¶ 23, 25. In *Wallace*, the plaintiffs only alleged that some of the products sold by defendant were mislabeled. 747 F.3d at 1030–31. Here, plaintiff alleges that all Peñafiel Water fails to comply with FDA standards. Dkt. No. 11 ¶ 5. In *Doss*, the defendant violated a regulation promulgated by a consumer protection group, not a federal agency. No. 36, slip op. at 3. Here, defendant allegedly violated a federal standard promulgated by the FDA. Dkt. No. 11 ¶ 19.

7

The Court therefore GRANTS defendant's motion to dismiss plaintiff's requested injunctive relief with prejudice.

## CONCLUSION[4]

For the reasons stated above, the Court hereby GRANTS defendant's motion to dismiss. Specifically, the Court GRANTS the motion to dismiss for lack of standing without prejudice. Further, the Court GRANTS the motion to dismiss plaintiff's request for injunctive relief with prejudice. **If plaintiff chooses to file an amended complaint, it must be filed on or before December 6, 2019.**

**IT IS SO ORDERED**.

Dated: November 7, 2019

_____
SUSAN ILLSTON
United States District Judge

---

[4] The Court also GRANTS the parties' requests for judicial notice. Dkt. Nos. 25, 36, 46.