ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
NOAH M. SCHUBERT (S.B.N. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law

LAURENCE D. PASKOWITZ (*pro hac vice*)
THE PASKOWITZ LAW FIRM P.C.
208 East 51st Street, Suite 380
New York, NY 10022
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com

Attorneys for Plaintiff John Pels
[additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PELS, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>KEURIG DR PEPPER, INC., a Delaware corporation,<br><br>        Defendant. | Case No. 3:19-cv-03052-SI<br><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>   1.  **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT;**<br>   2.  **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW;**<br>   3.  **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW: and**<br>   4.  **UNJUST ENRICHMENT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Pels, on behalf of himself and all others similarly situated, through his undersigned attorneys, alleges this Second Amended Class Action Complaint against Defendant Keurig Dr Pepper, Inc. ("Defendant" or "Keurig") on actual knowledge as to his own acts, and on information and belief after due investigation (including a review of documents produced by the Food and Drug Administration received under the Freedom of Information Act) as to all other allegations, as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action against Keurig, one of the world's largest bottlers and distributors of bottled water and flavored beverages.

2.      Plaintiff is a California consumer who, in both 2018 and 2019, purchased and consumed bottled beverages distributed as part of Keurig's popular Peñafiel brand.  This brand consists of approximately 14 different Peñafiel varieties including Peñafiel Mineral Spring Water, one of the particular varieties Plaintiff purchased and consumed.

3.      Peñafiel Mineral Spring Water has been contaminated by excessive levels of arsenic for many years and, indeed, when an independent laboratory tested one of the bottles of Peñafiel Mineral Spring Water purchased by Plaintiff, the test revealed that the bottle contained an unlawful amount of arsenic.

4.      The federal Food and Drug Administration ("FDA") detected these unlawful arsenic levels in Peñafiel Mineral Spring Water on more than one occasion and banned its import on multiple occasions—bans that Keurig disregarded.  As early as 2009, New Jersey regulators found arsenic levels in Peñafiel Mineral Spring Water that exceeded the legal limit, at one time by more than 100%.  Unlawful arsenic levels were also found in 2019 by both Consumer Reports and the Center for Environmental Health.   The FDA's most recent testing in 2019 showed arsenic levels at 60% above the legal limit.

5.      Keurig disregarded the danger, did not shut down operations at its Peñafiel plant in Mexico, and did not undertake remedial measures until demanded to do so by Plaintiff herein in his initial Complaint, and by the FDA.  On June 21, 2019, Keurig belatedly issued a "withdrawal" of Peñafiel Mineral Spring Water.  The press release issued that day admitted that the recall was

1    "due to the presence of violative levels of arsenic", and that: "Water quality tests of Peñafiel

2    samples conducted by an independent laboratory on behalf of Keurig Dr Pepper detected arsenic at

3    levels that exceeded the FDA's bottled water standards for mineral water of 10 ppb."

4          6.      Up until then, however, Keurig had concealed that thousands of its customers were

5    ingesting bottled water that contained excessive levels of arsenic, a known poison. Keurig's

6    wrongdoing was publicly reported in a 2019 exposé in *Consumer Reports.* Of the many water

7    brands tested by *Consumer Reports,* Peñafiel water was the *only brand* that exhibited high

8    toxicity, reflecting levels of arsenic consistently above legal limits. Such consistent arsenic

9    findings over many years are not surprising, as all of the Peñafiel Mineral Spring Water is

10   contaminated at the source: the Tehuacan, Mexico springs from which the water is drawn.

11   Without substantial filtering, which Keurig did not utilize, all bottles contained violative arsenic

12   levels, as the source water in Tehuacan is contaminated.

13         7.      Peñafiel is part of Dr. Pepper Snapple Group, owned by Defendant Keurig, which

14   markets more than 50 beverage brands throughout North America, including the Mineral Spring

15   Water.

16         8.      Plaintiff and all members of the Class (defined herein as "all consumers who

17   purchased Peñafiel Mineral Spring Water in the United States within the applicable statute(s) of

18   limitations") and California Sub-Class (Class members who purchased in California) have been

19   injured by the acts alleged herein. In this Second Amended Complaint, Plaintiff seeks

20   restitutionary relief under the Unfair Competition Law (UCL), the False Advertising Law (FAL),

21   and the Consumer Legal Remedies Act (CLRA), as well as actual and punitive damages under the

22   CLRA. (Keurig has been provided due notice of a CLRA damages claims more than 30 days prior

23   to this pleading). Plaintiff also asserts a claim for unjust enrichment.

24

25         **JURISDICTION AND VENUE**

26         9.      This Court has jurisdiction over the subject matter of this action pursuant to 28

27   U.S.C. § 1332(d), enacted pursuant to the Class Action Fairness Act ("CAFA"), because there are

28

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

1  more than 100 proposed Class Members, some members of the proposed class and the Defendant

2  are citizens of different states, and the amount in controversy exceeds $5 million.

3      10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff

4  and many Class members are citizens of this District.  Moreover, Defendant regularly transacts

5  and continues to transact business in this District.

6      11.    This Court has *in personam* jurisdiction over the Defendant because, *inter alia,*

7  Defendant: (a) transacted business in this District; (b) maintained continuous and systematic

8  contacts in this District prior to and during the Class Period; and (c) purposefully availed itself of

9  the benefits of doing business in this District.  Accordingly, the Defendant maintains minimum

10 contacts with this District which are more than sufficient to subject it to service of process and to

11 comply with due process of law requirements.

12     12.    Intradistrict Assignment: Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to

13 the San Francisco Division of the Northern District of California is proper because a substantial

14 part of the events or omissions which gave rise to the claim occurred in this Division or a

15 substantial part of the property subject to the action is situated in this Division. Plaintiff resides in

16 this Division and purchased the product at issue in this Division. Defendant promoted, marketed,

17 distributed, and sold the product at issue in this Division.

18                                 **PARTIES**

19     13.    Plaintiff Pels is an individual residing in Sonoma County, California and a citizen

20 of California.  During the Class Period (as defined below), in both 2018 and 2019, Plaintiff

21 purchased Peñafiel Mineral Spring Water from a Wal-Mart store located in Windsor, California

22 and was deceived by Defendant in that he was of the belief he was obtaining a safe product made

23 in conformity with the law. He suffered an ascertainable loss and monetary damages as a result of

24 Defendant's unlawful conduct alleged herein.  Plaintiff would not have purchased this product at

25 any price had he known it contained violative arsenic levels. Keurig disregarded its legal duty to

26 inform Plaintiff and other consumers of this material fact.  Plaintiff consumed Peñafiel Mineral

27 Spring Water on multiple occasions during the Class Period.  One of these occasions was on or

28 around April 24, 2019, when Plaintiff purchased two bottles of Peñafiel Mineral Spring Water in

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

Windsor, California at Wal-Mart.  Plaintiff consumed one of these bottles. The remaining bottle was later tested by an independent laboratory. Test results indicate that the bottle contained an arsenic level of 15 ppb, 50% above the legal limit of 10 ppb.  This arsenic level was substantially similar to that derived by the FDA (16 ppb) as a result of its own testing in June 2019 of samples gathered in May 2019.

14.     Defendant Keurig is a for-profit corporation formed and existing under the laws of the State of Delaware with its principal place of business at 83 South Avenue, Burlington, Massachusetts 01803. Defendant is a citizen of Delaware and Massachusetts.  Defendant Keurig is one of the world's largest bottlers and distributors of bottled water and flavored beverages. Peñafiel Mineral Spring Water is owned and manufactured by Defendant Keurig.

## FACTUAL ALLEGATIONS

15.     The demand for bottled water continues to grow in the United States and internationally.  Consumers believe bottled water is healthy, unadulterated, and more flavorful in many cases than tap water.

16.     Trade organizations like the International Bottled Water Association work hard to reinforce in the public mind that bottled water is safely sourced and subject to stringent testing:

> Once the water enters the bottled water plant several processes are employed to ensure that it meets the U.S. Food and Drug Administration (FDA) purified water standard. ***These treatments can include utilizing a multi-barrier approach. Measures in a multi-barrier approach may include one or more of the following: reverse osmosis, distillation, micro-filtration, carbon filtration, ozonation, and ultraviolet (UV) light.  The finished water product is then placed in a sealed bottle under sanitary conditions and sold to the consumer.***

> Moreover, the water from public water systems is often compromised after emergency situations or natural disasters (e.g., hurricanes, floods, tornados, fires, or boil alerts). During these times, bottled water is a necessary and reliable alternative to deliver clean, safe drinking water.[1]

17.     Bottled water is subject to comprehensive government regulation at both the federal and state level. In addition, the International Bottled Water Association (IBWA) has adopted industry standards (IBWA Bottled Water Code of Practice) that are, in some instances, more

---

[1]  *Bottled Water Vs. Tap Water,* International Bottled Water Association, available at: https://www.bottledwater.org/health/bottled-water-vs-tap-water (last visited Nov. 25, 2019).

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

1   stringent than FDA or EPA requirements.  As mandated by federal law, FDA's bottled water

2   standards must be no less stringent and no less protective of the public health than EPA's

3   regulations for public drinking water.

4          18.     Both the FDA and the EPA are underfunded and understaffed.  Accordingly, they

5   sometimes limit themselves to notifying distributors of a problem, and expecting them to act

6   responsibly in rectifying it.  Most such companies do act responsibly.  Others, like Keurig here, do

7   not.

8          19.     One of the chief concerns about any drinking water is that it may become

9   contaminated by naturally occurring (yet harmful) substances or by artificial toxins.  This occurred

10  consistently for many years to Peñafiel Mineral Spring Water, as it was contaminated by arsenic

11  from a uniform source: the Tehuacán, Mexico springs, which gather runoff from the Pico de

12  Orizaba volcanic formation.  For at least a decade, as has been repeatedly detected, Peñafiel

13  Mineral Spring Water has exceeded legal arsenic limits.

14         20.     Arsenic is poisonous to humans and regulations exist to limit the amount of arsenic

15  in drinking water.  Because arsenic is a naturally occurring element, and is used in agriculture and

16  industry, it may leach into water sources used for drinking unless detected and filtered out.  If it is

17  not filtered out, it poses a serious public health risk.  For example:

18              (a)     **It Damages the Heart:**  CNN reported on May 7, 2019: "Young adults free

19  of diabetes and cardiovascular disease developed heart damage after only five years of exposure to

20  low-to-moderate levels of arsenic commonly found in groundwater. This was the finding of a

21  study published Tuesday in Circulation: Cardiovascular Imaging, an American Heart Association

22  Journal.  "Low-level arsenic exposure is associated with a disproportionate growth of the heart

23  independent of hypertension and other traditional risk factors," the study's lead author, Dr. Gernot

24  Pichler, wrote.  "The higher the arsenic content in drinking water, the greater the damage to the

25  heart."

26              (b)     **It is a Carcinogen:**  The International Agency for Research on Cancer

27  (IARC), part of the World Health Organization (WHO), has one of its major goals to identify

28  causes of cancer. IARC classifies arsenic and inorganic arsenic compounds as "carcinogenic to

-6-

1    humans."  This is based on sufficient evidence in humans that these compounds can cause: lung

2    cancer, bladder cancer, and skin cancer.

3             (c)    **It Can Lead To Kidney Disease:**  Arsenic exposure can lead to chronic

4    kidney disease and kidney fibrosis.  Numerous scientific studies have shown that arsenic exposure

5    led to various forms of renal dysfunction.  Normally after an acute kidney injury, kidney cells

6    regrow to recover the organ's function.  However, chronic exposure to toxicants, like arsenic,

7    injures the kidneys repeatedly and leads to the development of chronic kidney disease, an

8    irreversible condition for which there is no current treatment.  Worse still, chronic kidney disease

9    is progressive and leads to kidney failure.

10            (d)    **It Increases the Risk of Diabetes:**  Science Daily reported in 2018 that

11   chronic exposure to arsenic interferes with insulin secretion in the pancreas, which may increase

12   the risk of diabetes. It drew on research published in the American Journal of Physiology --

13   Regulatory, Integrative and Comparative Physiology.

14       21.    The State of California has officially listed arsenic as a chemical known to cause

15   cancer and reproductive toxicity. 27 California Code of Regulations §§ 27001(b)&(c). California's

16   Proposition 65 makes it unlawful for businesses to knowingly and intentionally expose individuals

17   in California to chemicals known to the State to cause cancer, birth defects, or other reproductive

18   harm without first providing clear and reasonable warnings to exposed individuals. Arsenic is

19   subject to the clear and reasonable warning requirements regarding carcinogens and reproductive

20   toxicants under Proposition 65. Cal. Health & Safety Code § 25249.6.  However, no such clear

21   and reasonable warning is provided on Peñafiel Mineral Spring Water bottles.

22       22.    Under federal standards, companies like Keurig are required to ensure that spring

23   water and spring water-based products contain arsenic levels no higher than 10 parts per billion

24   (ppb). The FDA has advised:

25       Producers of bottled water are responsible for assuring, through appropriate
         manufacturing techniques and sufficient quality control procedures, that all bottled
26       water products introduced or delivered for introduction into interstate commerce
         comply with the quality standard (§ 165.110(b)). *Bottled water that is of a quality*
27       *below the prescribed standard is required by § 165.110(c) to be labeled with a*
         *statement of substandard quality.* Moreover, any bottled water containing a
28       substance at a level that causes the food to be adulterated under section 402(a)(1) of

-7-

the act (21 U.S.C. 342(a)(1)) is subject to regulatory action, even if the bottled water bears a label statement of substandard quality.[2]

23.     Peñafiel Mineral Spring Water is carbonated, but this does not exempt it from arsenic regulation. In explaining the scope of the pertinent regulation, 21 CFR § 165.110 ("Section 165.110"), the FDA made clear that it covers any bottled water labeled "spring water":

> Products or ingredients described by a term that is defined by the standard of identity (e.g., "spring water") or with a term that makes a claim about the water (e.g., "natural water") are standardized waters and must comply with § 165.110 whether carbonation has been added or not.

60 FR 57076, 57077.  Because Keurig labels Peñafiel as "spring water," it falls within the FDA's standard of identity for spring water. Keurig must therefore comply with the FDA's arsenic regulation, irrespective of added carbonation.

24.     The New Jersey Department of Health found excessive arsenic in Peñafiel Mineral Spring Water in 2008, 2009, 2013, and 2014, with levels running as high as 22 ppb.

25.     No later than 2013, high levels of arsenic were detected in Peñafiel water during an inspection of a company named R.R. Importaciones Inc. in Passaic, New Jersey.  The proprietor represented that he had only imported the product for personal use in 2012, yet one year later dozens of bottles from that same distributor were ordered destroyed.  Keurig has disclaimed knowledge of this incident, yet it may be inferred that high levels of arsenic were in Peñafiel Mineral Spring Water as early as 2008.

26.     In 2015 and again in early 2018, the FDA issued import alerts entitled: "Detention Without Physical Examination of Bottled Water due to Arsenic ***and Flavored Water Beverages*** Due to Inorganic Arsenic."  Among the producers listed was Peñafiel; the toxic products were identified as carbonated water (March 4, 2015) and mineral water (April 4, 2018). In FDA Import Alert 29-02, which pertains to Peñafiel beverages, the FDA has described the Peñafiel product at issue in this case as "dangerous" and "adulterated."  *See* Import Alerts and Enforcement, https://www.fda.gov/food/metals/arsenic-food-and-dietary-supplements (last visited

---

[2]     Available at:   https://www.federalregister.gov/documents/2004/12/02/04-26531/beverages-bottled-water (last visited Nov. 25, 2019).

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

Nov. 25, 2019).  Nonetheless the issue persisted and import of the dangerous product continued into the United States unabated.

27.     On April 18, 2019 Consumerreports.org published an article entitled, "*Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says.*"[3]  The article reflects Consumer Reports' independent review of various brands of bottled water.  Only 11 brands out of 130 tested had detectable levels of arsenic.  Peñafiel contained excessively high levels of arsenic—70% above the legal standard:

> As part of our investigation, CR also was able to purchase two brands of imported water—Jermuk from Armenia and Peñafiel from Mexico—that are on an import alert issued by the federal government for previously having arsenic levels above the federal limit of 10 ppb. Such an alert is meant to "prevent potentially violative products from being distributed in the United States," according to the Food and Drug Administration. Even so, CR easily purchased the two brands in retail stores in two states and on Amazon.

> Beverage giant Keurig Dr. Pepper provided CR in March with Peñafiel's bottled water quality report for 2018, ***which stated that the water had nondetectable amounts of arsenic.*** But the company said this week that it had conducted new testing, because of CR's questions, and confirmed levels above the federal limit, at an average of 17 ppb.

> "An arsenic level of 17 ppb is a clear violation of the federal bottled water standard of 10 ppb," says Jean Halloran, director of food policy initiatives at CR.

28.     On June 21, 2019, Keurig issued the following statement (in relevant part):

> **Keurig Dr Pepper Announces Voluntary Withdrawal of Unflavored Peñafiel Mineral Spring Water that Does Not Meet FDA Bottled Water Quality Standards**

> BURLINGTON, Mass. and PLANO, Texas, June 21, 2019 /PRNewswire/ -- Keurig Dr Pepper today announced it will voluntarily withdraw Peñafiel unflavored mineral spring water products, imported from Mexico, due to the presence of violative levels of arsenic. Arsenic when present in the diet at very high levels, well above those detected in recent samples of Peñafiel, is associated with numerous chronic diseases.  Water quality tests of Peñafiel samples conducted by an independent laboratory on behalf of Keurig Dr Pepper detected arsenic at levels that exceeded the FDA's bottled water standards for mineral water of 10 ppb.

> All unflavored Peñafiel mineral spring water products including 600mL and 1.5L of all date codes are included in this voluntary withdrawal.  The product is packaged in PET bottle formats.  Consumers who have this product in their possession can return it to their retailer for a full refund.

---

[3]   Available at:   https://www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/ (last visited Nov. 25, 2019), and incorporated by reference herein.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

29.     No provision was made for those consumers who ingested the product prior to Keurig's withdrawal.  Hazardous water is of no use and of no value to consumers and threatens their health.   Keurig has acted irresponsibly and unlawfully in connection with its sale and marketing of Peñafiel water, and appears to have engaged in an attempt to conceal the truth.

30.     The recall came after Plaintiff's initial Complaint was filed, and upon insistence by the FDA.  Documents obtained by Plaintiff pursuant to the Freedom of Information Act ("FOIA") reveal that samples gathered and tested by the FDA in May-June 2019 contained a violative arsenic level of 16 ppb.  According to a June 27, 2019 e-mail written by Dr. Henry Kim of the FDA's Office of Food Safety to his colleagues at the FDA, the FDA declared that Peñafiel water was a regulated product under Section 165.110 and informed Defendant Keurig of the same; according to the FDA, Defendant Keurig agreed.

31.     Keurig did not release the results of its own testing, but admitted that it also found violative levels of arsenic in Peñafiel water based on the evaluation of an independent laboratory.

32.     For the foregoing reasons, Plaintiff brings this action for actual and punitive damages, restitutionary relief, and appropriate disgorgement of unjust enrichment.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rule of Civil Procedure, seeking actual and punitive damages, restitutionary relief, and disgorgement of unjust enrichment under state consumer protection statutes and/or the common law on behalf of himself and all members of the Class and California Sub-Class defined below.

34.     The "Class" consists of all consumers who purchased Peñafiel Mineral Spring Water in the United States within the applicable statute(s) of limitations.  The "California Sub-Class" consists of all consumers who purchased Peñafiel Mineral Spring Water in California within the applicable statute(s) of limitations.

35.     Excluded from the Class and California Sub-Class are governmental entities, Defendant, and Defendant's officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Class and California

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

1  Sub-Class are any judges, justices, or judicial officers presiding over this matter and the members

2  of their immediate families and judicial staff.

3      36.     This action is brought and may be properly maintained as a class action pursuant to

4  Rule 23. This action satisfies the requirements of Rule 23, including numerosity, commonality,

5  typicality, adequacy, predominance, and superiority.

6      37.     **Numerosity**. The Class and California Sub-Class for whose benefit this action is

7  brought are so numerous that joinder of all members is impracticable.  While the exact number of

8  persons who fit within each proposed class are presently unknown, Plaintiff, on information and

9  belief, alleges that the Class and California Sub-Class include at least thousands of persons. The

10  size of the Class and California Sub-Class can be ascertained through appropriate discovery.

11      38.     **Commonality**: This action involves common questions of law and fact to the Class

12  and California Sub-Class because each Class and California Sub-Class Member's claim derives

13  from the same allegedly unlawful and deceptive action.  The common questions of law and fact

14  involved predominate over questions that affect only Plaintiff or individual Class Members.  Thus,

15  proof of a common or single set of facts will establish the right of each member of the Class to

16  recover. These common questions of law and fact include, but are not limited to:

17      a.     Whether Defendant marketed and sold Peñafiel Mineral Spring Water,

18  which contained arsenic in excess of 10 parts per billion;

19      b.     Whether Peñafiel Mineral Spring Water was adequately packaged, and

20  labeled;

21      c.     Whether Defendant Keurig represented the Peñafiel Mineral Spring Water

22  as having characteristics, uses, or benefits that it did not have;

23      d.     Whether Defendant Keurig's omissions regarding the arsenic content of

24  Peñafiel Mineral Spring Water were false and misleading;

25      e.     Whether Defendant Keurig engaged in unlawful, unfair, or fraudulent

26  business practices;

27      f.     Whether Defendant Keurig's omissions regarding the Peñafiel Mineral

28  Spring Water were false and misleading and constitute false advertising;

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

g.      Whether Plaintiff and the Class or California Sub-Class have been damaged by the wrongs alleged herein and are entitled to compensatory or punitive damages; and

h.      Whether Plaintiff and the Class or California Sub-Class are entitled to equitable relief, including restitution.

39.      Each of these common questions is also susceptible to a common answer that is capable of class-wide resolution and will resolve an issue central to the validity of the claims.

40. *Typicality*: Plaintiff's claims are typical of the Class and California Sub-Class because he bought Peñafiel Mineral Spring Water during the Class Period.  Defendant's allegedly omissive and deceptive actions concern the same business practices described herein.  Thus, Plaintiff, the Class and California Sub-Class Members sustained the same injuries and damages arising out of Defendant's conduct in violation of law. The injuries and damages of each Class and California Sub-Class Member were caused directly by Defendant's wrongful conduct in violation of law as alleged herein.

41.      *Adequacy of Representation*: Plaintiff will fairly and adequately protect the interests of all Class and California Sub-Class Members and his interest does not conflict with the Class or California Sub-Class's interests.  Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the Class and California Sub-Class.  No conflict of interest exists between Plaintiff, the Class and California Sub-Class Members because all questions of law and fact regarding liability of Defendant are common to the Class and California Sub-Class Members and predominate over the individual issues that may exist.  The necessary financial resources to adequately and vigorously litigate this class action will be provided, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and California Sub-Class Members and are determined to diligently discharge those duties.

42.      *Predominance and Superiority*: The Class and California Sub-Class can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class or California Sub-Class Members. A class action is also superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class and California Sub-Class Member's claim is impracticable.

-12-

1   Even if each Class or California Sub-Class Member could afford individual litigation, the court

2   system could not. It would be unduly burdensome if thousands of individual cases proceed.

3   Individual litigation also presents the potential for inconsistent or contradictory judgments, the

4   prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among

5   those with equally meritorious claims. Individual litigation would increase the expense and delay

6   to all parties and the courts because it requires individual resolution of common legal and factual

7   questions. By contrast, the class-action device presents far fewer management difficulties and

8   provides the benefit of a single adjudication, economies of scale, and comprehensive supervision

9   by a single court.

10   **FIRST CLAIM FOR RELIEF**

11   **(Violation of California's Consumers Legal Remedies Act ("CLRA")**

12   **Cal. Civ. Code §§ 1750, *et seq.*-- California Sub-Class)**

13   43.     Plaintiff realleges and incorporates by reference all previous allegations of the

14   Complaint as if they were set forth in full herein.

15   44.     This Claim is brought pursuant to CLRA, California Civil Code §§ 1750, *et seq.*

16   Due notice of a CLRA damages claim was provided to Keurig and more then 30 days have

17   elapsed without Keurig taking the action demanded.

18   45.     The CLRA prohibits any unfair, deceptive, and/or unlawful practices, as well as

19   unconscionable commercial practices in connection with the sale of any goods or services to

20   consumers. *See* Cal. Civ. Code § 1770.  The CLRA "shall be liberally construed and applied to

21   promote its underlying purposes, which are to protect consumers against unfair and deceptive

22   business practices and to provide efficient economical procedures to secure such protection." Cal.

23   Civ. Code § 1760.

24   46.     Defendant is a "person" under the CLRA.  Cal. Civ. Code § 1761(c).  Plaintiff is a

25   "consumer" under the CLRA. Cal. Civ. Code § 1761(d).   The Peñafiel Mineral Spring Water

26   bottles are "good(s)" under the CLRA, Cal. Civ. Code § 1761(a).  Plaintiff's purchase of the

27   Peñafiel Mineral Spring Water constituted a "transaction[]" under the CLRA. Cal. Civ. Code §

28

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

1761.  Defendant's actions and conduct described herein constitute transactions that have resulted in the sale of goods to consumers.

47.     Defendant's failure to conform the Peñafiel Mineral Spring Water contents to required legal standards and provide required warnings and labeling under both federal and state law, and under the common law, is an unfair, deceptive, unlawful, and unconscionable commercial practice.

48.     As a result, Defendant's conduct violates several provisions of the CLRA, including, but not limited to:

a.     1770(a)(5): Representing that goods or services have sponsorship, ***approval, characteristics, ingredients, uses, benefits,*** or quantities that they do not have—here, each Peñafiel Mineral Spring Water beverage carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing themselves to health risks from arsenic exposure; and

b.     1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, each Peñafiel Mineral Spring Water beverage carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing themselves to health risks from arsenic exposure.

49.     In addition, under California law, a duty to disclose arises in any of the following four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

50.     Defendant had a duty to disclose to Plaintiff and the California Sub-Class that Peñafiel Mineral Spring Water was of substandard quality and contained arsenic in excess of federal limits for the following two independent reasons: (1) Defendant had exclusive knowledge of the information at the time of sale, (2) Defendant actively concealed from Plaintiff the excessive amount of arsenic contained in Peñafiel Mineral Spring Water, and 3) Defendant

-14-

represented that the product was spring water, but did not disclose that it was unfiltered spring water, and thus carried the risks posed by unfiltered, and unpurified, products.

51.     Defendant violated the CLRA by selling bottled water that contained arsenic in excess of federal limits and by unlawfully concealing the substandard quality of the bottled water from Plaintiff and the California Sub-Class. Defendant further violated the CLRA by failing to label the product "substandard" as federally required and failing to provide notice as required under California law, including Proposition 65.

52.     Defendant's omissions in violations of the CLRA were likely to mislead an ordinary consumer. Plaintiff and the California Sub-Class reasonably understood Defendant's omissions to mean that Peñafiel Mineral Spring Water did not contain arsenic in excess of federal limits. Plaintiff and the California Sub-Class also reasonably understood Defendant's omissions to mean that Peñafiel Mineral Spring Water was not of substandard quality. Had Defendant disclosed that Peñafiel Mineral Spring Water contained arsenic in excess of federal limits and was of substandard quality, Plaintiff and the California Sub-Class would have been aware that the water contained excessive arsenic and was of substandard quality, and Plaintiff and the California Sub-Class would not have purchased Peñafiel Mineral Spring Water.

53.     Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

54.     Plaintiff and the California Sub-Class relied to their detriment on Defendant's omissions in purchasing Peñafiel Mineral Spring Water.

55.     Pursuant to Cal. Civ. Code § 1782(a), Defendant was served with notice of its alleged violations of the CLRA by certified mail return receipt requested on June 21, 2019. Because Defendant failed to remedy its unlawful conduct within the requisite time period, Plaintiff and the California Subclass seek all compensatory damages and relief to which they are entitled.

56.     In light of Defendant's oppression, fraud, and malice, Plaintiff, on behalf of himself and the California Sub-Class also seeks punitive damages under Cal. Civ. Code § 3294 in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.* **- Unlawful Prong—**

**Regulatory Violations--California Sub-Class)**

57.     Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

58.     Plaintiff has standing to pursue this claim because he suffered injury in fact and has lost money or property as a result of Defendant's actions as described *supra*. All California Sub-Class Members overpaid for Peñafiel Mineral Spring Water due to Defendant's omission and concealment of its excessive arsenic levels and Defendant's failure to disclose that Peñafiel Mineral Spring Water was unfiltered and unpurified, and of substandard quality.

59.     Section 17200 of the California Business & Professions Code, known as the Unfair Competition Law ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or misleading advertising ...." Section 17200 specifically prohibits any "unlawful ... business act or practice."

60.     The UCL borrows violations of other laws and statutes and considers federal violations also to constitute violations of California law.

61.     Defendant's conduct was unlawful under FDA regulations, and under Proposition 65, Cal. Health & Safety Code § 25249.5 *et seq.,* and particularly § 25249.6 (failure to provide requisite warnings about the risks of arsenic exposure).

62.     Defendant's conduct in unlawfully offering for sale and selling Peñafiel Mineral Spring Water that was unlawfully contaminated by arsenic is without excuse or justification.

63.     Defendant has violated the FDA arsenic level rules which make it unlawful to disseminate mineral spring water containing arsenic at levels higher than 10 ppb.

64.     As a result of Defendant's unlawful conduct, Plaintiff and the California Sub-Class were damaged. Plaintiff and the California Sub-Class received an inferior product from that which they were promised and/or expected. Had Defendant disclosed the excessive arsenic levels and

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI

1  substandard quality of Peñafiel Mineral Spring Water, Plaintiff and the California Sub-Class

2  would not have purchased Peñafiel Mineral Spring Water.

3        65.     Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an

4  order requiring Defendant to make full restitution of all monies it wrongfully obtained from the

5  California Sub-Class Members, as well as all other relief permitted under the UCL.

6  **THIRD CLAIM FOR RELIEF**

7  **(Violation of California's Unfair Competition Law ("UCL")**

8  **Cal. Bus. & Prof. Code §§ 17200, *et seq.* - Unfair Prong--California Sub-Class)**

9        66.     Plaintiff realleges and incorporates by reference all previous allegations of the

10  Complaint as if they were set forth in full herein.

11        67.     Plaintiff has standing to pursue this claim because he suffered injury in fact and has

12  lost money or property as a result of Defendant's actions as described *supra*. All California Sub-

13  Class Members overpaid for Peñafiel Mineral Spring Water due to Defendant's concealment of its

14  excessive arsenic levels and Defendant's failure to disclose that Peñafiel Mineral Spring Water

15  was of substandard quality.

16        68.     Section 17200 of the California Business & Professions Code (the "UCL")

17  prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or

18  misleading advertising ..." Section 17200 specifically prohibits any "unfair ...business act or

19  practice." Defendant's practices violate the UCL's "unfair" prong.

20        69.     A business act or practice is "unfair" under the UCL if the reasons, justifications,

21  and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged

22  victims. A business act or practice is also "unfair" under the UCL if a defendant's conduct is

23  immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A business

24  act or practice is also "unfair" under the UCL where the consumer injury is substantial, the injury

25  is not outweighed by any countervailing benefits to consumers or competition, and the injury is

26  one that consumers themselves could not reasonably have avoided considering the available

27  alternatives. Finally, acts may be unfair where, as here, they are tethered to and violative of

28  specific regulatory provisions.

-17-

70.     Defendant's conduct, as detailed herein, constitutes unfair business practices. Defendant's practices, as described herein, are "unfair" within the meaning of the UCL because the conduct is unethical and injurious to California residents, and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers, including Plaintiff and California Sub-Class Members.

71.     While Defendant's decision to market Peñafiel Mineral Spring Water despite its violative nature and in violation of federal law and Prop. 65 may have utility to Keurig in that it allowed Defendant to sell more Peñafiel Mineral Spring Water without incurring high compliance costs, this is exactly the type of conduct which the law prohibits.

72.     Defendant's misconduct not only injures the persons who purchase the Peñafiel Mineral Spring Water, but it also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unfair and unethical conduct, and who do filter their beverages.

73.     Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue, and misleading advertising in violation of California Business & Professions Code § 17200, the UCL.

74.     As a result of Defendant's unfair conduct, Plaintiff and the California Sub-Class were damaged. Plaintiff and the California Sub-Class received an inferior product from that which they were promised and/or expected. Had Defendant disclosed the excessive arsenic levels and substandard quality of Peñafiel Mineral Spring Water, Plaintiff and the California Sub-Class would have become aware of the true facts, and would not have purchased Peñafiel Mineral Spring Water.

75.     Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order requiring Defendant to make full restitution of all monies it wrongfully obtained from the California Sub-Class Members, as well as all other relief permitted under the UCL.

## FOURTH CLAIM FOR RELIEF

### (Violation of California's Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.* - Fraudulent Prong--California Sub-Class)

-18-

76.     Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

77.     Plaintiff has standing to pursue this claim because he suffered injury in fact and has lost money or property as a result of Defendant's actions as described *supra*. All California Sub-Class Members overpaid for Peñafiel Mineral Spring Water due to Defendant's concealment of its excessive arsenic levels and Defendant's failure to disclose that Peñafiel Mineral Spring Water was of substandard quality.

78.     Section 17200 of the California Business & Professions Code, known as the Unfair Competition Law ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or misleading advertising ...." Section 17200 specifically prohibits any "fraudulent ... business act or practice."

79.     Defendant's actions as alleged herein constitute a "fraudulent" practice because by concealing the excessive arsenic levels of Peñafiel Mineral Spring Water and by failing to disclose that the water was of substandard quality, Defendant's conduct was likely to deceive consumers. Defendant's failure to disclose the excessive arsenic and substandard quality of Peñafiel Mineral Spring Water, constitutes a material omission in violation of the UCL.

80.     As a result of Defendant's fraudulent conduct, Plaintiff and the California Sub-Class were damaged. Plaintiff and the California Sub-Class received an inferior product from that which they were promised and/or expected. Had Defendant disclosed the excessive arsenic levels and substandard quality of Peñafiel Mineral Spring Water, Plaintiff and the California Sub-Class would have become aware of the true facts, and would not have purchased Peñafiel Mineral Spring Water.

81.     Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order requiring Defendant to make full restitution of all monies it wrongfully obtained from the California Sub-Class Members, as well as all other relief permitted under the UCL.

### FIFTH CLAIM FOR RELIEF

**(Violation of California's False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code §§ 17500, *et seq.*--California Sub-Class)**

82.     Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

83.     Plaintiff brings this claim individually and on behalf of the California Sub-Class against Defendant.

84.     Defendant engaged in advertising and marketing to the public and offered for sale Peñafiel Mineral Spring Water that was adulterated with high and violative levels of arsenic.

85.     The FAL states:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

86.     Defendant's business practices as alleged herein constitute unfair, deceptive, untrue and misleading advertising pursuant to California's FAL because Defendant advertised the Peñafiel Mineral Spring Water in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendant to be untrue or misleading, as Defendant created the impression that the product was safe to consume when, in fact, it was not. Defendant concealed the material information from consumers that Peñafiel Mineral Spring water contained excessive arsenic levels and was of substandard quality.

87.     Defendant's omissions alleged herein deceived or had the tendency to deceive the general public regarding the quality and composition of Peñafiel Mineral Spring Water.

-20-

88.     Defendant's omissions alleged herein were the type of omissions that are material, i.e. a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

89.     Defendant's omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such omissions may be presumed as a matter of law.

90.     At the time Defendant made the omissions alleged herein, Defendant knew or should have known that they were untrue or misleading, and Defendant acted in violation of California Business and Professions Code Section 17500, *et seq.*

91.     As a result, Plaintiff and each member of the California Sub-Class has been injured, lost money or property, and is entitled to relief. Plaintiff and the California Sub-Class seek restitution and all other relief permitted under California Business and Professions Code Section 17500, *et seq.*

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment – Nationwide Class)

92.     Plaintiff realleges and incorporates by reference all previous allegations of the Complaint as if they were set forth in full herein.

93.     Defendant has been unjustly enriched to Plaintiff's and the Class Members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiff and the Class members, such that Defendant's retention of their money would be inequitable.

94.     Defendant's unlawful and wrongful acts, as alleged above, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

95.     Plaintiff and the Class Members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.  Defendant's retention of the benefits conferred by Plaintiff and the Class members would be against fundamental principles of justice, equity, and good conscience.

96.     Plaintiff and the Class Members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiff and the Class Members.

97.     Plaintiff and the Class Members are entitled restitutionary disgorgement.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all claims so triable.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff, on behalf of himself and the Classes alleged, demands judgment against Defendant and requests the entry of:

a.      An order certifying the proposed Class and California Sub-Class under Rule 23;

b.      An order appointing Plaintiff to represent the Class and California Sub-Class;

c.      An order declaring that the conduct complained of herein violates the CLRA;

d.      An order declaring that the conduct complained of herein violates the UCL;

e.      An order declaring that the conduct complained of herein violates the FAL;

f.      An order declaring that Defendant has been unjustly enriched;

g.      A judgment awarding Plaintiff and the Class and California Sub-Class restitution and disgorgement of all compensation obtained by Defendant from its wrongful conduct;

h.      A judgment awarding Plaintiff and the Class and California Sub-Class compensatory damages in an amount to be proven at trial;

i.      A judgment awarding Plaintiff and the Class and California Sub-Class punitive damages, where available, in an amount to be proven at trial;

j.      Prejudgment and post-judgment interest at the maximum allowable rate;

k.      Attorneys' fees and expenses and the costs of this action; and

l.      All other and further relief as this Court may deem just, equitable, or proper.

DATED: December 5, 2019                          THE PASKOWITZ LAW FIRM P.C.

By: *Laurence D. Paskowitz*

<u>Laurence D. Paskowitz</u>

LAURENCE D. PASKOWITZ (*pro hac vice*)
THE PASKOWITZ LAW FIRM P.C.
208 East 51st Street, Suite 380

-22-

New York, NY 10022
Telephone: (212) 685-0969
lpaskowitz@pasklaw.com

ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
NOAH M. SCHUBERT (S.B.N. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law

ROY L. JACOBS (*pro hac vice*)
ROY JACOBS & ASSOCIATES
420 Lexington Avenue, Suite 2440
New York, NY 10170
Telephone: (212) 867-1156
rjacobs@jacobsclasslaw.com

DAVID N. LAKE (S.B.N. No. 180775)
LAW OFFICES OF DAVID N. LAKE,
A Professional Corporation
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
david@lakelawpc.com

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO.: 3-19-CV-03052-SI